**DANA THORNTON**
**PRO SE**
Confidential
(973) 900-0706
and as legal parent for the minor child M.P.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANA THORNTON, individually, and as legal parent for the minor child M.P. | CIVIL ACTION |
| Plaintiff, | Case No. : |
| v. | |
| STATE OF NEW JERSEY; ADMINISTRATIVE OFFICE OF THE COURTS; TONYA HOPSON, in her official capacity as Chief, Equal Employment Opportunity/Affirmative Action Officer, ADMINISTRATIVE OFFICE OF THE COURTS; JUDGE THOMAS M. COMER, in his official capacity as a Judge for MONMOUTH COUNTY COURT; CHRISTINE NORBUT BEYER, in her official capacity as the Commissioner of DCF; DEPARTMENT OF CHILDREN AND FAMILIES (DCF); DIVISION OF CHILD PROTECTION AND PERMANENCY (DCPP); KAITLYN MCGINN; MARY LIPPINCOTT, in her individual capacity; MONMOUTH COUNTY PROSECUTOR'S OFFICE; MATTHEW PLATKIN, ATTORNEY GENERAL FOR THE STATE OF NEW JERSEY, in his official capacity; JUDGE MARK LEMIEUX, , in his official capacity as the Assignment Judge for MONMOUTH COUNTY COURT; ALLAN WEINBERG, ESQ., in his official capacity; DEPARTMENT OF CHILDREN AND FAMILIES (DCF); DIVISION OF CHILD PROTECTION AND PERMANENCY (DCPP); GINA KIRK, in her individual capacity; JUDGE JAMES M. NEWMAN, in his official capacity as a Judge for MONMOUTH COUNTY COURT; JUDGE ELLEN TORREGROSSO-O'CONNOR, in her official capacity as a Judge for MONMOUTH COUNTY COURT; FREEHOLD POLICE DEPARTMENT; FRANK MOUNT in his official capacity | **COMPLAINT AND JURY DEMAND** |
| Defendants. | |

Plaintiff Dana Thornton, in the above-captioned matter, individually, and as legal parent for the minor child M.P. bring forth these causes of action against Defendants, that states as follows:

## PARTIES

1.     Plaintiff, Dana Thornton, (referred to at times as "D.T.") I am a Black American citizen that has resided in the State of New Jersey all my life. I am the maternal mother of the child M.P.. I am a licensed, fingerprinted and background checked realtor working in the State of New Jersey, and I am of sound mind and memory.

2.     Plaintiff M.P. is the biological and legal minor child of the Plaintiff Dana Thornton, and was diagnosed as having Attention Deficit Disorder (ADD)

3.     Defendant State of New Jersey is a public entity within the meaning of Title II of the Americans with Disabilities Act and at all times relevant has been a recipient of federal financial assistance under the Rehabilitation Act of 1973.

4.     Defendant Administrative Office of the Courts, is the Administrative Office of the Courts of the State of New Jersey and is a public entity within the meaning of Title II of the Americans with Disabilities Act and at all times relevant has been a recipient of federal financial assistance under the Rehabilitation Act of 1973.

5.      Defendant Tonya Hopson, Chief (hereinafter referred to at times as "Defendant" or "Hopson"), is the Equal Employment Opportunity/Affirmative Action Officer for the Administrative Office of the Court of the State of New Jersey, is sued in her official capacity, and is liable for her actions done under color of state law. This Defendant is entrusted to protect the Constitutional rights of those she encounters and at all times relevant hereto was acting within the scope of her duties and authority, under color or title of state law supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the Defendants.

6.      Defendant, Thomas M. Comer (hereinafter referred to at times as "Defendant" or "Comer"), is a Judge in New Jersey Superior Court, Family Division, Monmouth County, and is sued in his official capacity, and is liable for his actions done under color of state law. This Defendant is entrusted to protect the Constitutional rights of those he encounters and at all times relevant hereto was acting within the scope of his duties and authority, under color or title of state law supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the Defendants.

7.      Defendant, Monmouth County Court (hereinafter referred to at times as "Defendant" or "MCC"), is a public entity in the State of New Jersey Superior Court, in Monmouth County, and is sued in their official capacity, and is liable for their actions done under color of state law. This Defendant is entrusted to protect the

Constitutional rights of those they encounter and at all times relevant hereto was acting within the scope of their duties and authority, under color or title of state law supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the Defendants.

8.     The Defendant, Christine Norbut Beyer (hereinafter referred to at times as "Defendant" or "Beyer") is the current Commissioner of the Department of Children and Families and is liable for her actions in her official capacity done under color of state law. This Defendant is entrusted to protect the Constitutional rights of those she encounters and at all times relevant hereto was acting within the scope of her duties and authority, under color or title of state law supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions, and at all times relevant has been a recipient of federal financial assistance under the Title IV-B of the Social Security Act.

9.     Defendant, Kaitlyn McGinn (hereinafter referred to at times as "Defendant" or "McGinn"), is a caseworker with DCP&P during relevant times to this Complaint, and is liable for her acts and omissions in her individual capacity done under color of state law. This Defendant is entrusted to protect the Constitutional rights of those she encounters and at all times relevant hereto was acting within the scope of her duties and authority, under color or title of state law supervised or controlled one or

more of the Defendants herein, or acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions.

10.     Defendant, Mary Lippincott (hereinafter referred to at times as "Defendant" or "Lippincott"), is a Manager with DCP&P, Monmouth South location,  during relevant times to this Complaint, and is liable for her acts and omissions in her individual capacity done under color of state law. This Defendant is entrusted to protect the Constitutional rights of those she encounters and at all times relevant hereto was acting within the scope of her duties and authority, under color or title of state law supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions.

11.     Defendant Monmouth County Prosecutor's Office, is a public entity within the meaning of Title II of the Americans with Disabilities Act and at all times relevant has been a recipient of federal financial assistance under the Rehabilitation Act of 1973, including but not limited to the Victims of Crime Act (VOCA) Victim Assistance Grant Program.

12.     Defendant Matthew Platkin, (hereinafter referred to at times as "Defendant" or "Platkin"), is the Attorney General for the State of New Jersey, is sued in his official capacity, and is liable for his actions done under color of state law. This Defendant is entrusted to protect the Constitutional rights of those he encounters and

at all times relevant hereto was acting within the scope of her duties and authority, under color or title of state law supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the Defendants.

13.    Defendant, Judge Mark Lemieux (hereinafter referred to at times as "Defendant" or "Lemieux"), is the Assignment Judge in New Jersey Superior Court, Monmouth County, and is sued in his official capacity, and is liable for his actions done under color of state law. This Defendant is entrusted to protect the Constitutional rights of those she encounters and at all times relevant hereto was acting within the scope of her duties and authority, under color or title of state law supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the Defendants.

14.    Defendant Alan Weinberg (hereinafter referred to as "Defendant" or "Weinberg") is a person under the Constitution for the United States of America and an attorney duly admitted to practice before the Courts of the State of New Jersey and appearing as counsel for the "GP" in Family Court adverse to the Plaintiff, named as a Defendant both individually and in his official capacity as an attorney and officer of the Courts of the State of New Jersey.

15.    Defendant the New Jersey Department of Children and Families ("DCF") is an agency of the State of New Jersey and is a public entity within the meaning of Title II of the Americans with Disabilities Act and at all times relevant

has been a recipient of federal financial assistance under the Rehabilitation Act of 1973, and at all times relevant has been a recipient of federal financial assistance under the Title IV-B of the Social Security Act.

16.   Defendant the New Jersey Division of Child Protection and Permanency ("DCP&P") is a division of DCF and is a public entity within the meaning of Title II of the Americans with Disabilities Act and at all times relevant has been a recipient of federal financial assistance under the Rehabilitation Act of 1973, and at all times relevant has been a recipient of federal financial assistance under the Title IV-B of the Social Security Act.

17.   Defendant, Gina Kirk (hereinafter referred to at times as "Defendant" or "Kirk"), is a Supervising Family Services Specialist II, with DCP&P, Monmouth South location,  during relevant times to this Complaint, and is liable for her acts and omissions in her individual capacity done under color of state law. This Defendant is entrusted to protect the Constitutional rights of those she encounters and at all times relevant hereto was acting within the scope of her duties and authority, under color or title of state law supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions.

18.   Defendant, Judge James M. Newman (hereinafter referred to at times as "Defendant" or "Newman"), is a Judge in New Jersey Superior Court, Criminal

Division, Monmouth County, and is sued in his official capacity, and is liable for his actions done under color of state law. This Defendant is entrusted to protect the Constitutional rights of those he encounters and at all times relevant hereto was acting within the scope of his duties and authority, under color or title of state law supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the Defendants.

19.   Defendant, Judge Ellen Torregrosso-O'Connor (hereinafter referred to at times as "Defendant" or "Torregrosso-O'Connor"), is the Assignment Judge in New Jersey Superior Court, Monmouth County, and is sued in her official capacity, and is liable for her actions done under color of state law. This Defendant is entrusted to protect the Constitutional rights of those she encounters and at all times relevant hereto was acting within the scope of her duties and authority, under color or title of state law supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the Defendants.

20.   Defendant Freehold Township Police Department, is a police department in Monmouth County in the State of New Jersey and is a public entity within the meaning of Title II of the Americans with Disabilities Act and at all times relevant has been a recipient of federal financial assistance under the Rehabilitation Act of 1973.

21.    Defendant, Frank Mount (hereinafter referred to at times as "Defendant" or "Mount"), is a police officer, with Freehold Township Police Department,  during relevant times to this Complaint, and is liable for his acts and omissions in his individual and official capacity done under color of state law. This Defendant is entrusted to protect the Constitutional rights of those she encounters and at all times relevant hereto was acting within the scope of her duties and authority, under color or title of state law supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions.

## JURISDICTION AND VENUE

22.    This is a civil action brought against the Defendants by the Plaintiff, seeking a judgment to enforce and declare her rights under the Fourteenth Amendment to the Constitution for the United States of America pursuant to 42 U.S.C. §1983 and 28 U.S.C. §§2201-2202 and §204(a) of the Federal Civil Rights Act of 1964 (Civil Rights Act), and seeking a judgment against those responsible for abuse of process, a common law cause of action in the State of New Jersey, with Fundamental Constitutional Rights and as M.P.'s advocate pursuant to under Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§12133, 12181-12188, 42 U.S.C. § 2000a-3(a), § 204(a) of the federal Civil Rights Act of 1964 (Civil Rights Act), to redress unlawful disability-based practices and to make Plaintiff whole, and

seeking a judgment against those responsible for abuse of process, a common law cause of action in the State of New Jersey, and seeking a judgment for violation of my having certain natural and unalienable rights and of pursuing and obtaining safety and happiness, under Article I, paragraph 1 of the Constitution of the State of New Jersey, under Section 10:6-2 of the New Jersey Statutes (the New Jersey Civil Rights Act).

23. The Defendants violated the Clearly Established Constitutional Rights of the Plaintiff under the Fourteenth Amendment by maliciously, and spitefully discriminating against plaintiff due to race and sex and retaliated against her for her self representing and for complaints filed regarding the discriminating, prejudice and bias treatment which also included an Affirmative Action complaint, and concerns regarding due process in the Family Courts of the State of New Jersey for herself and others similarly situated.

24. The actions of the Defendants against the Plaintiff were retaliatory and sufficient to deter a person of ordinary fitness from exercising her Fourteenth Amendment Constitutional Rights.

25. This is an action to remedy violations of the rights of Plaintiff under the Fourteenth Amendments of the Constitution for the United States of America under 42 U.S.C. 1983 as legal and biological parent of her son, M.P., with Fundamental Constitutional Rights.

26. The Court has jurisdiction over this action, which presents a federal

question under Article III, §2 of the Constitution for the United States of America,

pursuant to 28 U.S.C. §1331 and 2201-2202, with supplemental jurisdiction under

27. U.S.C. §1367 over Plaintiff's state law claims.

28. Venue is proper in this Court under 28 U.S.C. §1391, because the Plaintiff resides

in this District, and the majority of the events giving rise to this claim occurred while

Plaintiff resides in the District.

## FACTUAL BACKGROUND

29.    Plaintiff Dana Thornton an individual that has been the victim of domestic

violence and diagnosed with anxiety, which is a result of being in that verbally

abusive and coercive controlling relationship for thirteen (13) years, I am the

biological and legal parent for M.P., who is eleven (11) years old and I am a loving

and emotionally passionate mother.

30.    I have been the only parent who has physically taken care of M.P. since birth

and have been active with his extra-curricular activities, tutoring,  playdates, along

with other motherly responsibilities .  I have been the only parent who has attended

his IEP meetings since he was enrolled in Early Intervention.  I am the only parent

his pediatricians know and had interactions with.

31.    G.P. (herein referred to at times as G.P. or "John Doe") is who I was in a relationship with.  He got sick and went into the hospital.  I was his emergency contact and was in communication with him daily.

32.    I ended the relationship with G.P. in 2022 when he got caught cheating and living a double life. The nurse in the hospital called me the name of the woman (herein referred to as "Jane Doe") he was cheating and living with, and clarified that he said it was his "girlfriend"/ "significant other".  He told M.P. and I not to come to the hospital because Jane Doe was going there and he did not want to get exposed.

33.    G.P. came around occasionally whenever he felt like showing up. I was ok with this as he was verbally abusive so his absence was a break from the abuse.

34.    G.P. is known to have a drug problem and to be abusive, as he allegedly used to assault his first wife.

35.    G.P. owes the state of New Jersey $661,812.54 for money he fraudulently spent of his late mother.  Stealing is common for him and he stole my late mother's jewelry when I was pregnant, something common among drug abusers.

36.    In August of 2022, G.P. verbally assaulted me in front of the minor child and he was told not to come around anymore due to his impulsive degrading abusive behavior.  I also told him I did not want him around while he was on any drugs. I did not want my son subjected to this behavior.

37.    After several months went by, when G.P. realized I no longer wanted to be in a relationship with him, he filed a motion with the Superior Court of the State of New Jersey, Monmouth County, for parenting time.

38.    The first court appearance was January 10, 2023, before Judge Thomas Comer, G.P. hired attorney Allan Weinberg, Esq. (even though he was on Medicaid) all parties said  on the record that day that they were ready.  Once G.P. and his attorney received a copy of my cross-motion (attorney had pages missing) in an attempted mediation, which requested a hair follicle at a neutral facility, and a psychological evaluation be done on G.P., Mr. Weinberg asked Judge Thomas Comer for an adjournment.

39.    The second court appearance was on February 28, 2023 at Monmouth County Court.  On this day G.P. was allowed to produce a fraudulent drug screening from a facility G.P. picked which was ordered from his accountant who falsifies his tax returns to whatever G.P. needs them to say. I was in shock and opposed the fake drug results.  I explained on the record that he has a drug problem and that the screening results said it was for pre-employment, but at this point it was clear that Judge Thomas Comer had an exparte conversation regarding this case.

40.    The Defendants, by way of the Family Court in the State of New Jersey, administered a urine drug screening, which clearly showed more bias, because they sell detox drinks online that will make the test come out negative which is fraud.  It

was clear why G.P. and defendant Allan Weinberg, Esq. ran out of court on January 10, 2023.

41.     I wasn't aware of the conspiracy right away and I looked foolish to put my trust in defendant, Judge Comer as establishing G.P.'s drug problem was compromised by the confusing accommodations to allow a litigant, accused of having a substance abuse problem, to walk into a court room with their own drug screening results.

42.     On February 28, 2023, defendant Judge Comer was advised of the fraud done on G.P.'s tax return which is a violation of 26 U.S.C. § 7201 as I was explaining why the drug screening did not make sense, I advised that G.P. has an extensive driving record and defendant Judge Comer covered his eye and said "he could barely see out of his left eye" and said DMV never made him take a test. This dramatic behavior is a violation of Canon 3(B) (5). Additionally in 1999, the American Medical Association (AMA) reported that all physicians are ethically responsible for notifying their state motor vehicle department – in New Jersey's case, the Motor Vehicle Commission.

43.     Defendant, Judge Comer was in receipt of the fraudulent tax returns but stated on the record and agreed with defendant Weinberg that it was hearsay. It was also stated on the record that G.P. fraudulently filled out a Medicaid application which is a violation of 18 U.S.C. § 1347, and it was brought to the defendant's attention the

question of how does someone on Medicaid afford an attorney who stated his hourly rate at $435. per hour.  Along with paying his other bills which clearly total more than the amount on his Medicaid application.

44.    Defendant Judge Comer has an obligation to report fraud and to ignore the fraud presented several times with substantiality is in violation of 18 U.S.C. §1518. Defendant Judge Comer appears to have entered in to a conspiracy to commit fraud by deception, as why would a Superior Court Judge fail to report approximately $600,000 in unreported income to the IRS or any amount for that matter.

45.    In addition, defendant Comer was made aware that G.P. fraudulently falsified an address (in West Orange) he did not live at to the Division of Motor Vehicle which is insurance fraud a violation of 2C:21-17.2., as G.P. was living with his alleged "girlfriend" in Union, and a violation of New Jersey statute 2C:21-17.2.

46.    On April 3, 2023 there was a hearing, I had already filed an ACJC complaint against defendant Comer and he was clearly unhappy to find that out as he turns red when hes angry.  He treated me with bias on this day and actually minimized everything I presented to the court regarding G.P.. It was brought up again about the falsified tax return and defendant Judge Comer said on the record "I don't know what you want me to do with this" and defendant proceeded to talk down to me with a racist sexist connotation.

47.  I submitted substantial documentation and audio of the abuse I had to endure and the defendants by way of the Family Court in the State of New Jersey and from defendant Judge Comer and defendant Weinberg treated me with an attitude of who care and under color of law practically laughed at me in court.  In one instance defendant Comer put his hands over his mouth to hide laughing in my face.

48. On another court hearing G.P. was asked why he went into the woods in South Orange Reservation twenty six (26) times in a known gay cruising area and defendant Comer added/answered the question to/for G.P. and said You were taking in the trails. This is not about sexual preference, rather sexual deviance.

49.    I filed an Affirmative Action complaint with defendants by way of the Family Court in the State of New Jersey.  That complaint was covered up and not addressed.

50.    I emailed defendants Monmouth County Prosecutors Office regarding the fraud and they never responded back or followed up and they have the same could care less attitude as the other defendants.

51.    Defendant Judge Comer granted visitation to my abuser without following court guidelines, no paternity test/DNA no parentage certificate. I called DCPP when this order was issued.

52.    DCPP worker J. Troese interviewed M.P. at his school because I called through the hotline, and M.P. advised her that he did not want to go with G.P.

because he is toxic.  J. Troese advised she closed the case because M.P. wasn't in danger because I wasn't releasing him to G.P.

53.    July 2023 at another court hearing when defendant Comer found out I had called DCPP and that they closed the case.  Defendant proceeded to order that DCPP investigate knowing they already did.  This was done so defendant could collude with the caseworker from DCPP. Defendant Judge Comer ignored all my motions and any and all relief I requested, but order for me to have a psychological evaluation but not the "White" litigant who I requested take a psychological test from the first court hearing.  It is alleged the judges in Monmouth Family Court take bribes in exchange for rulings.

54.    Defendant Judge Comer also appears to be having exparte conversations as he referred to Jane Doe as the "girlfriend" also.

55.    G.P. used coercive control during our relationship and when I refused to stay in a relationship with him, he stopped paying all my bills to the point of me getting evicted even though he knew the minor child was enrolled in school and had an IEP.

56.    Due to G.P. not paying the rent that he has taken care of since 2012, I was served with an eviction notice in December from defendant by way of the Family Court in the State of New Jersey who colluded with my old landlord and his attorney in an effort to assist G.P. in deceptively gaining custody of a child that told numerous caseworkers and law enforcement that he did not want to go near G.P.

57. After the court hearing for the eviction defendants Comer, Weinberg and by way of the Family Court in the State of New Jersey, did conspire to harass me and defendant Comer on January 6, 2024 sent five (5) Monmouth County Sheriff to come to my home at 11:00pm at night to serve me with a court order.  I called defendants Freehold Township Police Department because of the aggressive banging on the door and they advised they knew they were they and to open the door.

58.    I was overwhelmed from needing to move right away and packing and worrying about my son M.P. being in school, but on January 8, 2024 the court served a warrant of removal for me to be out by January 12, 2024. The defendants by way of the Family Court in the State of New Jersey never once cared that I had a minor in Special Education in school.

59. On January 9, 2024 I had a missed call from defendant Kaitlyn McGinn, caseworker for defendants Division of Child Protection and Permanency (DCPP). A few minutes later she showed up at my home with another worker and she appeared shocked when she addressed what was I going to do regarding needing to move and I advised her I had a place to go.

60.    I advised defendant Kaitlyn McGinn of G.P. drug problem and his toxic behavior in front of my minor child.  She met with M.P. and he advised them on video that he felt safe with me and that he did not want to go with G.P. because hes

toxic and he explained how he curses at me in front of him.   The other caseworker (Steve?) advised him that he doesn't have to hide in the closet in case the police have to come back, which at this point they weren't even hiding the fact that they misuse taxpayers and law enforcements to intimidate litigants under color of law, simply because they feel above the law.

61.    I moved out of my resident on January 11, 2024, and defendants were aware that I moved and why.

62.    On January 31, 2024, defendant Kaitlyn McGinn caseworker for DCPP called me and I advised her I needed to get a restraining order because of stalking and the harassment of being taken to court constantly by G.P. when he never was around and couldn't answer the question about M.P.'s pediatrician. She said she didn't know where I could get one.

63.    On January 31, 2024 Defendant Kaitlyn McGinn, caseworker for DCPP performed a well visit interview and spoke with M.P. and saw the food in the fridge and his room, via zoom link she sent to me.  She saw M.P.'s tutoring and made it seem that everything was fine.

64.    On February 6, I went to Essex County to file for a restraining order and I filled out the papers and put the address I was staying at and I advised that DCPP was involved. When they called DCPP, due to the conspiracy to commit fraud by deception by defendant Comer Essex County said they couldn't give it go to the

county I was residing at.  When I went to that County they were already called and must have been advised to not assist me as they said the opposite of the other court.

65.     February 7, 2024 JCPD showed up where I was safely residing with M.P. and they handed a copy of a court order to my Godmother which reversed custody of M.P. to temporary sole legal and residential to G.P. who is actually living in a new apartment with Jane Doe which is her apartment, as he still is using the West Orange address on his license, NJ Division of Motor Vehicle can verify the dates of this fraudulent activity.

66.     The court order issued by defendant Judge Comer was from an exparte hearing that took place on February 5, 2024. This entire case was geared in favor of the litigant with the attorney and it appears this defendant Judge Comer was paid a bribe. I was not allowed due process of law and I feel violated by these defendants and they violate the emotional wellbeing of my child M.P. with no regards whatsoever of the effects of taking a child from the only parent they have been taken care of since birth.

67.     On February 7, 2024 the JCPD said we need to see the child to make sure he is ok, we let them in the house and the child M.P. started telling the officers right away I don't want to go with him, he's toxic.  The officer said to M.P. don't worry calm down you don't have to go. I played the abusive behavior on the body cam that was on the officer and I held up a text messages to show how G.P. speaks in a

degrading and abusive way.  The officer handed me a piece of paper to go to the court house in Hudson County and get a restraining order.

68.    On February 8, 2024, we were awakened to loud banging on the door, my godmother thought it was G.P. banging.  We called 911 several times because we didn't understand what was happening.  The door was breached because the defendant Judge Comer in his unhinged manner caused unnecessary force due to a lie defendant Kaitlyn McGinn relayed to defendants by way of the Family Court in the State of New Jersey.

69.    In a public article published in New Jersey there is a case in the same vicinage where a litigant tried to enforce their visitation rights through the same charge I was arrested for, but in that litigant's case the court and police refused to uphold their parenting time because the father was male and white and unlike me a black woman and I was arrested in front of the minor child M.P. I have no criminal background whatsoever and I am background checked because I am a licensed realtor.

70.    Defendant Judge Comer, maliciously tried to cause an arrest to manipulate a psychological evaluation through the criminal division, while never addressing a motion I paid for, which requested a hair follicle drug test and a psyche evaluation. Defendant also failed to report tax evasion or as he put it cheating on his taxes. This defendant entered into a conspiracy to commit fraud by way of deception. a violation under 42 U.S.C §1983, and 18 U.S.C. §241 and 18 U.S.C. §242.

71.     On February 8, 2024 there were two (2) DCPP workers that told M.P. he could stay safe with my godmother who is a reputable and well-respected doctor, they lied to M.P. which is a disregard for the minor child's emotional wellbeing.

72.     This is an abhorrent abuse of power and misconduct under color of state law, on the part of defendant Judge Comer, and he misappropriated taxpayers' money.

73.     On February 08, 2024 colluded to assist Monmouth County Courts with deception of entering a false charge of 2C:13-4A(1) and said in haec verba "Within the jurisdiction of this court, commit the act of interference with custody, to wit did knowingly take or detain a minor child, M.P. , with the purpose of concealing the minor child and thereby depriving the Child's other parent of custody or parenting time of custody or parenting time with the minor child for more than 24 hours."

74.     This officer did this in lieu of a parentage certificate filed with the registrar (Laura Ortiz Flores) in the Bureau of Vital Statistics in the Township of Freehold in the  county of Monmouth, as of the above date that complaint was written.

75.     On July 30, 2023 Office Frank Mount a lieutenant with the Freehold Police Department replied back in acknowledgement to an email sent to him from Plaintiff, regarding the FTPD calling the minor child's cell phone, along with other abusive evidence which he had authority to advise me of my rights to get a restraining order.

76.     In reference to the minor's cell phone Lt. Frank Mount issued complaint Seq. No. 000067, dated 2/8/24, with said minors private cell phone number on said complaint which is a violation of The Children's Online Privacy Protection Act (COPPA), 15 U.S.C. §§ 6501-6506, P.L. No. 105-277, 112 Stat. 2681-728.said complaint is currently being transmitted via the Freehold Township Police Department computers, including but may not be limited to the email transmissions to Monmouth County Court.

77.     On February 9, 2024, defendant Kaitlyn McGinn caseworker for DCPP called me while I was detained.  The first thing I asked was how was my son, she lied and said fine.  I was asking her questions about who he was living with and who was going to feed him, defendant snapped back real nasty and said G.P. first name with emphasis.

78.     When I was released, I found out M. P. called my godmother three plus time and when he reached her, he said I don't want to be here can you come and pick me up.

79.     The defendant Kaitlyn McGinn violated my constitutional rights under color of law and the minor child M.P.  She removed the child from his mother who is black to place him in the home of a white woman (Jane Doe) who has no biological relationship to anyone including G.P. said women allegedly had an abortion at 5 ½ month which she had to travel to New York to have done because it was a healthy

baby, and a late term abortion.  As a mother I have a divine right to say I don't want my child near this woman out of fear.  I was told by court staff and defendants that I could get it put in a court order for her not to go anywhere near M.P.

80.    I have no idea how they know of her because she is irrelevant to my family, she has no relation to any of us. She also has been involved in fraud in addition to allegedly being a drug addict who has theft charges for stealing from a grocery store, and not someone I would choose to have my child around.  This act by defendant Kaitlyn McGinn, caseworker for DCPP is an egregious form of racism . She violated the minor child even after he expressed his feelings and his reasons why. Defendant Kaitlyn McGinn's Gross negligence is a lack of care that demonstrates reckless disregard for the safety or lives of others, which is so great it appears to be a conscious violation of M.P. and my rights to safety by placing my child in this stranger's home along with G.P. a known drug addict.

81.    I filed an Emergent Order to Show Cause, and defendant  Judge Comer did his usual taunting and circle talking which he is known to do to provoke females to act emotional so he can use his redundant, repetitive fabrication that the female is unhinged, because he favors male litigants. When the hearing was done defendant Judge Comer said to G.P.  and pointed with a cocky smirk "How's M.P.?" then proceeded to ask him if he got him in school, I disenrolled him to set him up and get

him acclimated in a new school and area but need the restraining order to so we could feel safe.

82.     On February 22, 2024 I proceeded to Hudson County court to get a restraining order.  After testifying on the record, they found probable cause to give me a TRO. The procedure is to add the child to said TRO, but the hearing officer and the Judge said they couldn't trump the language defendant Judge Comer put in the order from my emergent Order to Show Cause which systematically blocked M.P. from protection.

83.     I advised defendant Judge Comer that I was in the process of filling out the paperwork for a restraining order, he asked what did G.P. do, more proof he disregarded the substantial exhibits I submitted, because there is a plethora of fraud and abuse.  Defendant order that all matters regarding emergent orders or custody come before him, knowing I don't live in that county and G.P. didn't either.  As this Federal Court is well aware sworn judges must uphold a strict ethical code of conduct according to not only State law but Federal law. Defendant Judge Comer illegally blocked me from getting a restraining order

84.     On February 9, 2024, defendant Judge James M. Newman gave me a piece of paper with Conditions of Release which show more collusion with the defendants a violation of 18 U.S.C. § 241, 42 U.S.C. §1983, 18 U.S.C. §242 including but not limited too DCPP and the Family Division of Monmouth County Court.  There were

no grounds to alienate me from my child. I am known as a good mother and nurturing. Defendants by way of by way of the Monmouth County Court Criminal Division in the State of New Jersey and defendants Judge Comer and Judge Newman entered into a conspiracy to commit fraud by deception, in violation of 18 U.S.C. § 241, 42 U.S.C. §1983, 18 U.S.C. §242.

85.    Defendant, Allan Weinberg has submitted falsified certifications knowing G.P. didn't live at the address (West Orange) that was entered in defendants motion. Defendant is also aware of the tax evasion a violation of 26 U.S.C. §7201 and is saying on the record G.P. made $984.00 per week which is $51,168.00. In an attempt to help G.P. conceal his fraud the defendant Weinberg filed a motion for counsel fees.  A violation of 18 U.S.C. § 241, 18 U.S.C. §242 and under Rule 8.4 (g) it is professional misconduct to discriminate against me for socioeconomic reasons. I have been discriminated against because I am a Black woman who had financial support from a white male.

86.    Defendant Judge Comer never addressed DNA, nor did he address child support, but entered in a conspiracy to commit fraud by deception.  Defendant entered for counsel fees to be paid by me which shows more prejudice and retaliation for my complaints against his unhinged prejudice misconduct. Defendant should of disqualified himself under 28 U.S.C. § 455

87.   Defendant Matthew Platkin has not responded to my complaint filed on February 18, 2024 (complaint No. 20-08-2024-02-18-20245840664193149294906) which shows a how children are being harmed by certain Judges and DCPP caseworkers.   Defendant publicly stated that the well being of Children was a concern for him regarding the META lawsuits. There is a problem within the Family Courts in the State of New Jersey that appears to be targeting women who are loving mothers and with allegations of Judges receiving bribes to sway a ruling in the favor of the litigant paying the bribe.

88.   Defendant Judge Mark Lemieux was also made aware of the fraudulent addresses and the domestic violence and this defendant should understand the importance of a victim trying to get an order of protection, as Tamara Seidle's requests got denied.

89.   Defendant Christine Norbut-Beyer, Commissioner of DCF, also was notified on February 2, 2024 with a cc: to Defendant Mary Lippincott and to date not one response. The case file records were requested and there is no law stating they can't release the records I am the mother, but they refused to release the case file.

90.   Defendant DCF was notified several times regarding going into the Address Confidentiality Program I have not received any feedback from them other that the generic emails stating they are in receipt of my requests.   These entities give the impression that they are in place only to receive the Federal Funding for them.   These

programs are not assisting victims of domestic violence or families, the way they present in their The Annual Progress and Services Report (APSR) reports.

91.    Defendant Judge Ellen Torregrosso-O'Connor, has been made aware that I had an Ethics Complaint against defendant Judge Comer and has never addressed moving the case to a Judge that would act with fairness,  impartiality and integrity. I filed a motion for change of venue and it was ignored until I created an account on PACER, twenty six (26) minutes later I reveived a Case Management Order that I inquired about in February when defendant was back from her vacation. Said Order gives four (4) days to submit a brief while favor was given to G.P. with a two (2) week time frame to respond. A violation of my constitutional rights under color of state law a violation of 42 U.S.C. § 1983

92.    On March 8, 2024 I text defendant Gina Kirk as no caseworker has reached out to me to advised of the welfare of the minor child. This is a violation of the minor childs rights to his biological mother.  This is a violation under color of state law which makes it a crime under 18 U.S.C §242.

## **FIRST COUNT**

### **(TITLE II OF
THE AMERICANS WITH DISABILITIES ACT)**

93.    Plaintiff repeats and re-alleges every allegation set forth above as if recounted at length herein.

94.    Plaintiff on behalf of the minor child M.P. who has been diagnosed with Attention Deficit Disorder (ADD)

95.    Plaintiff  Dana Thornton wanted to have equal access to court proceedings where her parental rights, and her child's reciprocal rights were at stake; accordingly, the child is a qualified individual with a disability as defined in 42 U.S.C. §12131.

96.    Defendants the State of New Jersey and the Administrative Office of the Courts are a State government and a department, agency, or other instrumentality of a State government, and/or are licensed; accordingly, Defendants are public and/or private entities as defined in 42 U.S.C. § 12131(1) and 42 U.S.C. § 12181.

97.    28 C.F.R. § 35.134 Retaliation or coercion, provides:

(a) No private or public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by this part, or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act or this part.
(b) No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act or this part.

98.    28 C.F.R. § 36.206 Retaliation or coercion, provides:
(a) No private or public entity shall discriminate against any individual

because that individual has opposed any act or practice made unlawful by this part, or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act or this part.

(b) No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act or this part.

(c) Illustrations of conduct prohibited by this section include, but are not limited to:

(1) Coercing an individual to deny or limit the benefits, services, or advantages to which he or she is entitled under the Act or this part;

(2) Threatening, intimidating, or interfering with an individual with a disability who is seeking to obtain or use the goods, services, facilities, privileges, advantages, or accommodations of a public accommodation;

(3) Intimidating or threatening any person because that person is assisting or encouraging an individual or group entitled to claim the rights granted or protected by the Act or this part to exercise those rights; or

(4) Retaliating against any person because that person has participated in any investigation or action to enforce the Act or this pmt."

99.    28 C.F.R. § 35.134 Retaliation or coercion, provides:

Title II of the ADA, 42 U.S.C. § 12132, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied benefits of the services, programs, or

activities of a public entity, or be subjected to discrimination by any such entity."

100.   Defendants are subject to Title II of the ADA because of contractual arrangements.

101.   As a result of Defendants' actions and inactions, Dana Thornton and M.P. have been injured and suffered pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

## SECOND COUNT

### Declaratory Relief 28 U.S.C. §2201

102.   Plaintiff repeats and re-alleges every allegation set forth above as if recounted at length herein.

103.   A declaratory judgment construing and determining the constitutionality of the rules promulgated and procedures employed by the New Jersey Department of Children & Families, Division of Child Protection & Permanency, Superior Court of the State of New Jersey, Chancery Division, Family Part will serve useful purpose in clarifying and settling legal relations in issue, and will terminate and

afford relief from uncertainty, insecurity, and controversy giving rise to proceeding.

104.   Plaintiff is not challenging state court judgments, but the underlying policy that governed those judgments.

**WHEREFORE**, Plaintiff Dana Thornton, individually and on behalf of M.P. respectfully requests that the Court enter judgment in her favor against Defendants,  Norbut Beyer, Matthew Platkin; Judge Mark Lemieux; Judge Ellen Torregrosso-O'Connor; Judge Thomas Comer; Kaitlyn McGinn; Mary Lippincott; Gina Kirk; Tonya Hopson

A. Declaring as a matter of right and due process under the Fourteenth Amendments to the Constitution for the United States of America, that the state, including its judicial branch, may not arbitrarily and capriciously enforce custody and visitation orders, nor orders requiring health care in the best interest of the child.

B. Declaring as a matter of right and due process under the Fourteenth Amendments to the Constitution for the United States of America, that the state, may not retaliate against parents for their public advocacy for the health, safety and welfare of their children.

C. Declaring as a matter of right and due process under the Fourteenth Amendments to the Constitution for the United States of America, that a parent has a Constitutional Right to a timely hearing with a full and complete record upon the application to a family court to assert their rights of visitation with

their children.

D. Declaring as a matter of right and due process under the Fourteenth Amendment to the Constitution for the United States of America, that a married person has a Constitutional Right to a timely divorce proceeding/hearing with a full and complete record upon the application to a family court to assert their rights consistent with due process of law.

## **THIRD COUNT**

### **Claim Under 42 U.S.C. §1983 for Injunctive Relief**

105.    Plaintiff repeats and re-alleges every allegation set forth above as if recounted at length herein.

106.    The Defendant, and Christine Norbut Beyer is charged with the responsibility and duty to protect and serve the public by properly hiring, supervising, training, disciplining and controlling child protective service workers under their command.

107.   This responsibility includes promulgation and enforcement of rules and regulations regarding avoidance of threats and abuse of process in the

investigation of allegations of child abuse.

108.   On information and belief, Defendant Christine Norbut Beyer, failed to promulgate adequate rules and regulations regarding avoidance of threats and abuse of process in the investigation of allegations of child abuse and further failed to instruct, discipline and train in the appropriate methods for handling and investigating allegations of child abuse without resorting to and abuse of process.

109.   On information and belief, Defendant Christine Norbut Beyer, established through tacit authorization or explicit instruction a policy or custom of allowing DCP&P workers to commit abuse of process. That policy was enacted and enforced with deliberate indifference to the constitutional rights of Plaintiff.

110.   Plaintiff has been harmed by such policy and is at risk of further harm from such policy.

111.   Plaintiff has been harmed by such policy and is at risk of further harm from such policy.

112.   The Defendants Matthew Platkin, Mark Lemieux, Thomas Comer, Ellen Torregrosso-O'Connor, are charged with the responsibility and duty to abide by

Constitutional Due Process of Law in family court proceedings involving the rights of parents to visit with their children.

113.   This responsibility includes implementing judicial proceedings which are determined based upon the rule of law and competent evidence with a full and fair opportunity to be heard in a court of record, and not which are determined arbitrary and capriciously.

114.   These Defendants have failed to abide by and implement such proceedings as a matter of due process as to the Plaintiff and those similarly situated to the Plaintiff.

115.   Plaintiff is not challenging state court judgments, but the underlying policy that governed those judgments.

116.   Plaintiff has been harmed by such policy and is at risk of further harm from such policy.

117.   Defendants, acting in their individual capacities and by their own acts, and at all times under the color of state law, each actively participated in, directed and/or knew of, and acquiesced in unlawful actions which have harmed Plaintiff's clearly established rights under the and Fourteenth Amendments.


**WHEREFORE**, Plaintiff Dana Thornton, individually and on behalf of M.P., respectfully demands judgment against the Defendants, Christine Norbut Beyer,

Mark Lemieux, Ellen Torregrosso-O'Connor, Thomas Comer, Tonya Hopson, Mary Lippincott, Gina Kirk, Kaitlyn McGinn, jointly and severally:

    A) For Injunctive Relief in the form of an order requiring that the explicit instruction and policy be made requiring DCP&P workers to refrain from abuse of process and properly investigate allegations of child abuse and/or neglect.

    B) For Injunctive Relief in the form of an order requiring the Superior Court of the State to institute ruled of procedure to guarantee that parents receive fair and timely hearings concerning their rights of visitation with their children consistent with the due process requirements of the Fourteenth Amendment.

## FOURTH COUNT

### Claim Under 42 U.S.C. §1983 for Monetary Relief

118.   Plaintiff repeats and re-alleges every allegation set forth above as if recounted at length herein.

119.   Defendants, Kaitlyn McGinn, Mary Lippincott, acting in their individual capacities and by their own individual acts, in conspiracy with and by agreement with judges in the Family Court, and at

all times under the color of state law, each actively participated in, directed and/or

knew of, and acquiesced in unlawful actions which have harmed Plaintiff's clearly

established rights under the First and Fourteenth Amendments.

**WHEREFORE**, Plaintiff Dana Thornton, individually and on behalf of M.P.,

respectfully requests that the Court enter judgment in their favor against

Defendants, Monmouth County Prosecutor Office, Kaitlyn McGinn, Christine

Norbut Beyer, Mary Lippincott, Gina Kirk and Allan Weinberg and award

compensatory damages to be determined at trial and punitive damages to be

determined at trial, in the total amount of Eight Million Dollars ($8,000,000), plus

interest, of suit, and such other and further relief the court deems equitable and

just.

## FIFTH COUNT

### Claim Under New Jersey Civil Rights Act

119.   Plaintiff repeats and re-alleges every allegation set forth above as if

recounted at length herein.

120.   Plaintiff has rights under the New Jersey Constitution as a victim of

Crime, Article I, paragraph 22.

121.   Defendants,  Kaitlyn McGinn, and Allan Weinberg, acting in their individual

capacities and by their own individual acts, in conspiracy with and by agreement

with judges in the Family Court, and at all times under the color of state law, each actively participated in, directed and/or knew of, and acquiesced in unlawful actions which have harmed Plaintiff's clearly established rights under the Fourteenth Amendments.

122.   Defendant Monmouth County Prosecutor Office, in their official capacity, and Defendant, Thomas Fichter, in his individual capacity, by their own individual acts, each actively participated in, directed and/or knew of, and acquiesced in unlawful actions which have harmed Plaintiff for exercising clearly established rights under the Constitution of the State of New Jersey.

**WHEREFORE**, Plaintiff Dana Thornton, individually and on behalf of M.P., respectfully requests that the Court enter judgment in their favor against Defendants, Monmouth County Prosecutor Office, Kaitlyn McGinn, Christine Norbut Beyer, Mary Lippincott, Gina Kirk and Allan Weinberg and award compensatory damages to be determined at trial and punitive damages to be determined at trial, in the total amount of Eight Million Dollars ($8,000,000), plus interest, of suit, and such other and further relief the court deems equitable and just.

## SIXTH COUNT

**Civil Conspiracy**

123.   Plaintiff repeats and re-alleges every allegation set forth above as if recounted at length herein.

124.   Kaitlyn McGinn, Thomas Comer, Ellen Torregrosso-O'Connor Sheedy, Mark Lemieux, Allan Weinberg, Frank Mount, Freehold Township Police Department have entered into an express or implied agreement to use improper and unlawful means to abuse process of law and deny litigants their fundamental rights under the First Amendment and both the Due Process and Privileges and Immunities clauses of the Fourteenth Amendment for their benefit and to injure persons appearing before the courts of the State of New Jersey.

125.   These Defendants have committed overt acts, as described above, in furtherance of the aforementioned agreement.

126.   As a result of these overt acts, Plaintiff has been damaged.

127.   These defendants' actions constitute an unlawful civil conspiracy for which there is no immunity, which is causing, and will continue to cause, immediate, substantial and irreparable harm to Plaintiff.

128.   Plaintiff's damages are not presently ascertainable or readily calculable with reasonable certainty.

129.   Plaintiff has no adequate remedy at law to protect her fundamental Constitutional Rights, and is suffering, and will suffer, irreparable injury unless these defendants are enjoined from engaging in the conduct described above.

**WHEREFORE**, Plaintiff Dana Thornton, individually and on behalf of

M.P. respectfully requests that the Court enter judgment in her favor against

Defendants, Kaitlyn McGinn, Thomas Comer , Ellen Torregrosso, Mark Lemieux,

Allan Weinberg. Tonya Hopson, Monmouth County Court, Administrative Office

of the Court, and award the following relief:

A. An injunction enjoining these defendants from violating the rights of

litigants appearing before the courts of the State of New Jersey, and abusing the

process of law so as to deny litigants their fundamental rights under the First

Amendment and both the Due Process and Privileges and Immunities clauses of

the Fourteenth Amendment for their benefit and to injure persons appearing before

the courts of the State of New Jersey.

B. Injunctive Relief to reverse the Order dated February 5, 2024 as it violated my

constitutional rights. A violation of 42 U.S.C §1983, and 18 U.S.C. §241 and 18

U.S.C. §242, and the minor M.P. under Title II of the Civil Rights Act of 1964. I

was discriminated because of race and because I am a female, under the color of

state law.

### JURY DEMAND AND DESIGNATION OF PLACE OF TRIAL

Plaintiff demands that this matter be tried to a jury of twelve in the United

States District Court for the District of New Jersey.

Respectfully submitted,

Dated: March 11, 2024

DANA THORNTON, PRO SE
individually and on behalf of M.P.