NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

<table>
<tr><td>

DANA THORNTON,

    Plaintiff,

       v.

STATE OF NEW JERSEY, et al.,

    Defendants.

</td><td>

Civil Action No. 24-2656 (RK) (JBD)

**OPINION**

</td></tr>
</table>

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court upon numerous motions by both *pro se* Plaintiff

Dana Thornton, ("Plaintiff"), and eighteen Defendants.[1] In addition to two documents purporting

to be complaints,[2] Plaintiff has filed two motions for miscellaneous relief: a "Motion for Emergent

---

[1] Defendants in this matter are: (1) the State of New Jersey; (2) the Administrative Office of the Courts; (3) Tonya Hopson, a judiciary employee; (4) Judge Thomas M. Comer of the Monmouth County Superior Court ("Judge Comer"); (5) the Department of Children and Families ("DCF"); (6) Christine Norbut Beyer, Commissioner of DCF; (7) Division of Child Protection and Permanency ("DCPP"); (8) Kaitlyn McGinn, a DCF Employee; (9) Mary Lippincott, a DCF Employee; (10) Gina Kirk, a DCF Employee; (11) the Monmouth County Prosecutor's Office; (12) Attorney General Matthew Platkin; (13) Judge Mark Lemieux, Assignment Judge for Monmouth County Superior Court ("Judge Lemieux"); (14) Judge James M. Newman of the Monmouth County Superior Court ("Judge Newman"); (15) Judge Ellen Torregrosso-O'Connor of the Monmouth County Superior Court ("Judge Torregrosso-O'Connor"); (16) the Freehold Police Department; (17) Detective Sergeant Frank Mount ("Sergeant Mount"); and (18) Allan Weinberg, Esq. ("Defendant Weinberg").

[2] Plaintiff in this case has filed two documents that could be considered complaints: an initial Complaint, (ECF No. 1 ("Compl.")), and a document entitled "Amendment to the Complaint," (ECF No. 29 ("Am. to Compl.")). While some Defendants argue that this second document, as titled, is an amended complaint, (*see* ECF No. 31-4 at 5–7), others claim that it cannot be an "Amended Complaint" given its facial defects, (*see* ECF No. 46-1 at 18–19).

The Court agrees that it is not an amended complaint. Upon review of the document entitled "Amendment to the Complaint"—which has no factual recitation, nor jurisdictional or factual statements—it is more appropriately considered a supplement to the initial Complaint. *See Dukes. v. Lancer Ins. Co.*, No. 08-4948, 2009 WL 3128467, at *1 n.2 (D.N.J. Sept. 24, 2009), *aff'd as modified*, 390 F. App'x 159 (3d Cir. 2010) (considering *pro se* plaintiff's "amended complaint" as a motion to supplement given the document's defects and given that the court was "construing the relationship between these two documents broadly . . . ."). Accordingly, in light of Plaintiff's *pro se* status, the Court will consider the initial Complaint, (ECF No.

Relief,"[3] (ECF No. 17), and a "Motion to Dismiss the Indictment in Monmouth County," (ECF No. 52). All Defendants have filed Motions to Dismiss. (*See* ECF Nos. 22, 24, 31, 32, 46, and 54.) The Court has considered the parties' submissions and resolves the pending motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.

For the reasons set forth below, Plaintiff's motions are **DENIED**. (ECF Nos. 17, 27, and 52.) Defendants' Motions are **GRANTED**, and the Complaint, (ECF Nos. 1 and 29), is dismissed with prejudice.

## I.    BACKGROUND

### a.  Plaintiff's Pending Motions before the Court

While Plaintiff's Complaint is difficult to discern, she appears to put forth six Counts in her 41-paged, 129-paragraphed (not including the "Amendment to the Complaint") Complaint.[4] Plaintiff pleads federal causes of action under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.* (Count I); and 42 U.S.C. § 1983, (Counts III, IV). She also

---

1), and the "Amendment to the Complaint," (ECF No. 29), together—considering the facts, jurisdictional statement, and information surrounding the parties set forth in the initial Complaint and the causes of action put forth in the document entitled "Amendment to the Complaint." Together, these documents will be referred to as "the Complaint."

[3] In addition to these two motions, Plaintiff appears to have filed a supplement, (ECF No. 27), to her first Motion for Emergent Relief, (ECF No. 17). The supplement is entitled: "Motion to Dismiss," (*see* ECF No. 27.) The facts asserted in this document are difficult to decipher, and she appends documents from state court including multiple "Complaint Form[s]" from the Supreme Court of New Jersey's Advisory Committee on Judicial Conduct, (*id.* at 6–9, 12–13); an attorney ethics grievance form, (*id.* at 9–11); text messages and photos, (*id.* at 14–20); notes written to a child by unidentified individuals, (*id.* 17–18); and a notice of foreclosure, (*id.* at 21)—among other documents. To the extent that this letter can be considered a motion, the Court considers this as a motion to supplement Plaintiff's Motion for Emergent Relief, (ECF No. 17), since both of these documents appear related to the same underlying request for relief: the return of custody of M.P. to Plaintiff and the alteration or overturning of the disposition of Plaintiff's child custody dispute in family court.

[4] While the Court is uncertain, Plaintiff appears to sue all Defendants in their individual and official capacities. (*See generally* Am. to Compl.)

seeks declaratory relief pursuant to 28 U.S.C. § 2201, (Count II).[5] In addition, she pleads two state law claims: a New Jersey Civil Rights Act claim, N.J.S.A. 10:6-1, *et seq.*, (Count V); and a common law civil conspiracy claim, (Count VI). Plaintiff invokes this Court's jurisdiction under 28 U.S.C. § 1331 and requests that this Court exercise supplemental jurisdiction over her State law claims. *See* 28 U.S.C. § 1367.

In addition to the relief sought in her Complaint, Plaintiff submitted two letter motions seeking miscellaneous relief (collectively, the "Miscellaneous Motions") in the following forms: (1) she requests injunctive relief in the form of "returning [her] child M.P." back to her, (ECF No. 17 at 1), which she supplemented in a letter entitled "Motion to Dismiss," (*See* ECF No. 27); and (2) she requests dismissal of an indictment in a separate state court criminal proceeding in Monmouth County; this criminal proceeding appears to be interrelated to the underlying custody dispute.[6] (*See* ECF No. 52.) In support of these motions, Plaintiff has filed multiple letters requesting that the Court decide her motions, and at times, providing what Plaintiff sees is additional, relevant information to this lawsuit. (*See, e.g.*, ECF Nos. 39, 47. 50, 53 and 58.)

### b. Factual Background

The crux of this matter is a child custody dispute in state court in Monmouth County, New Jersey which appears to be filed under Docket number FD-13-000385-23. This underlying dispute

---

[5] From the outset, the Court notes that the Declaratory Judgment Act "does not itself create an independent basis for federal jurisdiction but instead provides a remedy for controversies otherwise properly within the court's subject matter jurisdiction." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 394 (3d Cir. 2016) (internal citations omitted). Accordingly, for the Court to exercise jurisdiction, it must have a separate, independent basis to do so.

[6] This matter appears to be ongoing. For instance, on August 9, 2024, Plaintiff submitted a letter to the Court which purported to show the "continuance [sic] of violating my civil and constitutional rights under color of state laws in the State of New Jersey." (ECF No. 47-1.) With her letter, Plaintiff submitted documents from the state court criminal matter surrounding an adjournment request in that proceeding. (*See* ECF No. 47.) Again, Plaintiff submitted evidence of what she views as unfair treatment in the criminal state court matter in what seems to be an attempt to induce the state court to act in a certain way, as the CC line on the document notes that she would be filing a copy of the request in federal court. (ECF No. 47 at 1.)

is between Plaintiff and her ex-partner, Gregory Pessolano ("Pessolano") over the custody of their child, "M.P." (Compl. ¶¶ 31–32.) While the Court is unclear from the record whether the custody proceedings have terminated, based upon the information before it, the Court believes that the custody proceedings may have concluded.[7] (*Id.* ¶¶ 1, 42, 51, 62, 64, 67, 75, 81–83.)

As a result of Plaintiff's dissatisfaction with these custody proceedings, she has filed this federal lawsuit, suing eighteen different individual and state-entity Defendants—many of which appear to have limited connections to Plaintiff's custody dispute other than that they failed to assist her in the way that she had hoped they would.

Plaintiff is an African American woman who is M.P.'s mother. (*Id.* ¶ 1.) Plaintiff pleads that she has taken care of M.P. "since birth." (*Id.* ¶ 30) Pessolano and Plaintiff ended their relationship in 2022. (*Id.* ¶ 32.) Sometime thereafter, Pessolano filed a motion in state court for parenting time with his child, M.P. (*See id.* ¶¶ 32, 35, 37.) In connection with this motion, various state court appearances followed in front of a number of state court judges. (*E.g., id.* ¶¶ 38, 39, 42, 46, 48–49, 51.) These appearances culminated in the service of a court order upon Plaintiff on February 7, 2024 which appears to have awarded "temporary" sole legal and residential custody of M.P. to Pessolano. (*See id.* ¶ 65.) The following day, Plaintiff was arrested for interference with the custody of a child. (*Id.* ¶¶ 65, 67–69, 73.) This arrest appears to be the subject of the ongoing criminal matter in Monmouth County and the subject of Plaintiff's pending "Motion to Dismiss the Indictment in Monmouth County." (*See* ECF No. 52.)

The Complaint contains a variety of other allegations regarding the state court proceedings, including that Plaintiff was "illegally blocked" from filing a temporary restraining order based

---

[7] Given the confidential nature of family court proceedings, the Court has been unable to ascertain whether this proceeding is ongoing. (*See generally* Compl; *see also* ECF No. 46-1 at 24 (noting that "Plaintiff's Complaint does not specify whether the state proceedings are concluded . . . .").)

upon Judge Comer's orders—whom she also alleges is corrupt (stating that it appears that "defendant Judge Comer [sic] was paid a bribe"), (*id.* ¶¶ 66, 82–83); that another state court judge, Judge Newman, "alienate[d]" Plaintiff from her child by giving her unfavorable "Conditions of Release," (*id.* ¶¶ 84–85); and that a different state court judge, Judge Lemieux, ignored reports Plaintiff made against Pessolano claiming that Pessolano was using a fraudulent address and had engaged in domestic violence against Plaintiff, (*id.* ¶ 88). In addition to her allegations against these judges, Plaintiff's Complaint raises allegations against various other individuals, including: a prosecutor's office, (*id.* ¶ 122), a police department, (*id.* ¶ 20), individual police officers, (*id.* ¶ 67), different State agency caseworkers, (*id.* ¶ 92), and New Jersey Attorney General Matthew Platkin, (*id.* ¶ 87).

Overall, Plaintiff appears to argue that these individuals "colluded" against her, (*id.* ¶¶ 56, 73), and discriminated against her based upon her race, her gender, and her status as a *pro se* litigant in state court, (*e.g.*, *id.* ¶¶ 23, 69, 79, 85). Plaintiff repeatedly puts forth general factual assertions that Defendants "[b]y way of the Family Court in the State of New Jersey" showed bias against her by their decisions in State Court. (*See, e.g.*, *id.* ¶¶ 40, 49, 56–58, 68.) She pleads—in a rather jumbled and disjointed manner that is all but impossible to follow—specific examples of the treatment with which she is dissatisfied, sharing anecdotes of her treatment from family court at various proceedings, (*e.g.*, *id.* ¶¶ 46–47, 51, 81, 83), to argue that she was treated corruptly and unjustly in state court.

## II.    LEGAL STANDARD

### A.  RULE 12(B)(1)

Under Federal Rule of Civil Procedure ("Rule") 12(b)(1), a defendant may move to dismiss a complaint based on lack of subject matter jurisdiction. In deciding a Rule 12(b)(1) motion to

dismiss, a court must first determine whether the party presents a facial or factual attack because that distinction determines how the pleading is reviewed. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). "A facial attack concerns an alleged pleading deficiency whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *Young v. United States*, 152 F. Supp. 3d 337, 345 (D.N.J. 2015). In reviewing a facial attack, "the court must only consider the allegations of the complaint and documents referenced therein . . . in the light most favorable to the plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). On this posture, a court presumes that it lacks subject matter jurisdiction, and "the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). By contrast, in reviewing a factual attack, the court may weigh and consider evidence outside of the pleadings. *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).

The *Rooker-Feldman* doctrine precludes federal courts from asserting jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). A federal claim is barred by the *Rooker-Feldman* doctrine when the claim was either "actually litigated in a state court prior to the filing of the federal action" or "inextricably intertwined with the state adjudication . . . ." *In re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005). A federal claim is "inextricably intertwined" with an issue adjudicated by a state court when "(1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment." *In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009); *see also In re Knapper*, 407

F.3d at 580 (a federal claim is inextricably intertwined with a prior state court judgment when "federal relief can only be predicated upon a conviction that the state court was wrong.")

In essence, the Third Circuit has set forth four requirements for the application of the *Rooker-Feldman* doctrine. These are: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (quoting *Exxon Mobil Corp.*, 544 U.S. at 284).

### B. Rule 12(b)(6)

For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is "'plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, allegations that are "no more than conclusions" may be disregarded. *Id.* at 679. Restatements of the elements of a claim are legal conclusions, and therefore, are inadequate alone to survive dismissal. *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The court accepts allegations in the complaint as true and gives the plaintiff "the benefit of every favorable inference to be drawn therefrom." *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### III.    DISCUSSION

The essence of Plaintiff's claims is that she seeks this Court to intervene and/or vacate state court rulings and orders regarding child custody/visitation proceedings—as well as to somehow

intercede in an ongoing state criminal action against her. In this federal lawsuit, she employs the "kitchen-sink" approach by naming what appears to be everyone and anyone who might somehow have been involved in the state court custody proceedings. As explained below, the Court is unable to provide Plaintiff with the relief she seeks, and Plaintiff's Complaint must be dismissed with prejudice. Further, as detailed below, the redress Plaintiff seeks is more appropriately pursued in state court.

### 1. PLAINTIFF'S COMPLAINT

#### A. *ROOKER-FELDMAN* AND *YOUNGER* ABSTENTION

The Court lacks subject matter jurisdiction over this case under the *Rooker-Feldman* doctrine. Plaintiff's Complaint appears to focus singularly upon her dissatisfaction with underlying state court proceedings in her custody dispute with Pessolano, and tangentially, to the related, ongoing criminal case against her. The *Rooker-Feldman* doctrine applies to Plaintiff's two federal causes of action—the ADA and § 1983 claims—which would otherwise confer this Court with subject matter jurisdiction.

"The Third Circuit has consistently held that the *Rooker-Feldman* doctrine prohibits suits brought in federal court where, as here, Plaintiff challenges the judgments of state family courts." *Adamo v. Jones*, No. 15-1073, 2016 WL 356031, at *7 (D.N.J. Jan. 29, 2016) (internal citations omitted). According to the Third Circuit, *Rooker-Feldman* applies when four elements are met: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Min. Co.*, 615 F.3d at 166 (internal citations omitted). Here, the first prong is satisfied given that the evidence before the Court suggests that Plaintiff lost in state court and is now seeking

review of various decisions, including: the administration of a urine drug screening in the family court proceedings, (Compl. ¶¶ 40–42); the order of visitation—and eventual order of custody—to Pessolano, (*id.* ¶¶ 56, 58, 65); a notice of eviction issued to Plaintiff, (*id.* ¶¶ 56, 58); as well as various evidentiary determinations related to these proceedings, (*e.g.*, *id.* ¶¶ 47, 85, 113). These orders are frequently referred to in the past tense, (*e.g.*, *id.* ¶ 51 (that Plaintiff "called DCPP when [the visitation] order was issued."); *id.* ¶ 56 (noting that due to Pessolano "not paying the rent . . ." Plaintiff was "served" with an eviction notice "in an effort to assist [Pessolano] in deceptively gaining custody of a child . . . ."); *id.* ¶ 57 (noting that "[a]fter" a court hearing, five Monmouth County Sheriff deputies came to her home at 11:00 p.m. "to serve me with a court order"); *id.* ¶ 65 (noting that on February 7, 2024, "JCPD showed up" and "reversed custody . . . to temporary sole legal and residential" to Pessolano))—again, all indicia of the termination of this family custody matter.

Further, it is also apparent from Plaintiff's Causes of Action that she seeks relief for an action already concluded. Take, for example Plaintiff's ADA claim, where she argues facts involving her parental rights, and she states that her and M.P.'s "reciprocal rights *were* at stake" and that she was denied equal access to court proceedings. (Am. to Compl. ¶ 95) (emphasis added). She then states that she has been injured by Defendant's "actions and inactions" in these same proceedings. (*Id.* ¶ 101.) In addition to the fact that Plaintiff employs the past tense here—suggesting that these proceedings have terminated and thus satisfying the first prong of the *Great W. Mining & Min. Co.* test—this demonstrates the intertwined nature of Plaintiff's federal cause of action with the underlying state court proceedings. Pursuant to the second and third factors listed by the Third Circuit in *Great W. Mining & Min. Co.*, this claim clearly complains of injuries caused by previously-issued state court orders.

The Court reaches a similar conclusion when reviewing Plaintiff's claims under § 1983. In Count III, Plaintiff requests an order from this Court "requiring that the explicit instructions and policy be made requiring DCP&P [sic] workers to refrain from abuse of process and properly investigate allegations of child abuse/and or neglect" and an order "requiring the Superior Court of the State to institute ruled [sic] of procedure to guarantee that parents receive fair and timely hearings concerning their rights of visitation with their children consistent with the due process requirements of the Fourteenth Amendment." (*Id.* ¶ 117(A)-(B).) In Count IV, another cause of action under § 1983, Plaintiff requests $8,000,000.00 in relief—plus interest—for her damages for the actions taken "in conspiracy with and by agreement with judges in the Family Court." (*Id.* ¶ 119.)[8] Looking at the second and third factors listed by the Third Circuit in *Great W. Mining & Min. Co.*, these claims clearly complain of injuries caused by previously-issued state court orders.

Turning to the final factor set forth by the Third Circuit in *Great W. Mining & Min. Co.*, Plaintiff is inviting this Court to review the state court's decisions. Specifically, Plaintiff's two federal causes of action conferring this Court with subject matter jurisdiction purportedly arise from decisions made by the state courts to issue or enforce their own orders, (*see generally* Am. to Compl.), and seek redress from or to otherwise punish the actors involved in state court. All of these injuries are attributable to state court judgments authorizing the continuation of Pessolano's custody of M.P. It is black-letter law that *Rooker-Feldman* prevents federal courts from deciding "cases brought by state-court losers complaining of injuries caused by state-court judgments

---

[8] Although the Court need not do so, it briefly explains why Plaintiff's request for relief under the Declaratory Judgment Act fares no better. There, she asks for a "[a] declaratory judgment construing and determining the constitutionality of the rules promulgated and procedures employed by the [DCF], [DCPP], Superior Court of the State of New Jersey, Chancery Division, Family Part will serve useful purpose in clarifying and settling legal relations in issue, and will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to proceeding." (Am. to Compl. ¶ 103.) Plaintiff here explicitly asks the Court to resolve the underlying issues "giving rise to the proceeding," (*id.*), which clearly references the state court custody matter. Again, the Court is without power to provide Plaintiff with this relief.

rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284; *see also Melleady v. Blake*, No. 11-1807, 2011 WL 6303245, at *11 (D.N.J. Dec. 15, 2011) ("In other words, *Rooker-Feldman* precludes a federal action if the relief requested in the federal action would effectively reverse the state decision or void its ruling."). Here, Plaintiff seeks this Court's disruption of the state court's decisions. *Rooker-Feldman* applies.[9]

The Court contrasts this case from others within our Circuit where *Rooker-Feldman* has been found inapplicable. In this case, Plaintiff makes broad claims that her "due process" rights were generally violated through far-reaching-sweeping and vague claims of collusion. (Am. to Compl. ¶¶ 56, 73, 112, 114, 117, 124, 127.) Based on the record, it appears that these arguments were raised at the state court level. (*See* Compl. ¶¶ 79, 81–84, 86.)

This contrasts with situations where the Third Circuit has found *Rooker-Feldman* inapplicable. In *Ludwig*, for example—an unreported per curiam opinion—the Third Circuit found that plaintiff's allegations of "improper conduct in custody proceedings" that purportedly resulted in collusion and false reports to the state court in violation of Plaintiff's due process rights were not barred by *Rooker-Feldman* because the district court's decision "would not require a finding that the state court erred in relying on [the state authority's] reports." *Ludwig v. Berks Cnty., Pa.*, 313 F. App'x 479, 482 (3d Cir. 2008).[10] The situation here is distinct, as Plaintiff directly attacks

---

[9] This analysis is further supported by supplemental letters and documents that Plaintiff has submitted in support of her causes of action. For example, most recently, Plaintiff submitted a letter to the Court on October 2, 2024 with the subject line: "Copy of ACJC letter regarding complaints." (*See* ECF No. 58.) Appended to her letter are four exhibits, which contain various attachments, including: emails she sent to court employees putting forward allegations Plaintiff claims that other mistreated litigants made to her regarding their own treatment by state court judges in their own family court actions, (ECF No. 58-1), as well as an uncontextualized excerpt from a state court transcript, (ECF No. 58-3). These all appear to be related to the underlying family court matter.

[10] It is noteworthy, however, that the Third Circuit affirmed the district court's dismissal of plaintiff's complaint on the grounds that—although incorrect about *Rooker-Feldman's* applicability—the District

the state court judges' determinations and weighing of evidence in the custody case. (*See, e.g.*, Compl. ¶¶ 66, 68, 70, 82, 83, 86.) Indeed, here, Plaintiff's argument explicitly relies upon a finding that the state court erred in weighing the evidence that led to the outcome which she seeks to vacate. Accordingly, Plaintiff's claims are, at their essence, nothing more than an attempt to "couch [her general] claims as alleged violations of [her] constitutional rights . . . ." *See Melleady*, 2011 WL 6303245, at *10–*12 (noting that plaintiffs' § 1983 claims must be dismissed with prejudice, *inter alia*, due to *Rooker-Feldman* and noting that: "In order for this Court to grant any of the relief Plaintiffs seek, the Court would be required to review the decision of the New Jersey Family Court. Such a review would necessitate this Court passing judgment on the soundness and validity of the Family Court's actions, reasoning, and resolution of the underlying child abuse and neglect proceedings."); *see also Shawe v. Pincus*, 265 F. Supp. 3d 480, 487 (D. Del. 2017) (finding that, even to the extent the state court proceedings were not terminated, *Rooker-Feldman* applied to interlocutory orders from the state court, "because 'it cannot be the meaning of *Rooker-Feldman* that, while the inferior federal courts are barred from reviewing final decisions of state courts, they are free to review interlocutory orders.'" (internal citations omitted)).

The Court does note that, while it appears that the underlying matter has concluded given the fact that Plaintiff has stated that an "order" (albeit "temporary") awarding custody to Pessolano has been entered, (*see id.* ¶¶ 65–66), and she has sought redress reversing the same, (*see, e.g.*, ¶¶ 67, 75, 81–83), the Court cannot determine same conclusively. And indeed, at least one of the matters tangentially related to Plaintiff's Complaint—that involving the criminal prosecution in Monmouth County—appears to be ongoing (as well as Plaintiff's reference to a "temporary" award

---

Court was correct that the defendants were immune from suit under various immunity theories. *Id.* at 482–83.

of legal and residential custody of M.P. to her ex-paramour).[11] Accordingly, the Court endeavors to explain why, and how—even if both the custody proceedings and the criminal proceedings in Monmouth County are ongoing—the *Younger* abstention doctrine is implicated, and the Court cannot provide Plaintiff with the remedy she seeks.

Abstention from the exercise of jurisdiction under *Younger v. Harris*, 401 U.S. 37 (1971), is rooted in "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982).[12] Federal courts may abstain from exercising jurisdiction under the *Younger* abstention doctrine in three categories of proceedings: "(1) ongoing state criminal prosecutions; (2) certain civil enforcement proceedings; and (3) pending civil proceedings involving certain orders uniquely in furtherance of the state courts ability to perform their judicial functions.'" *Malhan v. Sec'y U.S. Dep't of State*, 938 F.3d 453, 462 (3d Cir. 2019) (citing *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78–79 (2013)) (quotations and additional citations omitted).

If a court finds that the subject proceeding fits one of the above categories, the court must then consider the additional *Middlesex* factors: "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." *Id.* (internal citations omitted).

---

[11] *See* discussion at *infra* Section III.2.

[12] "Strictly speaking, *Younger* abstention is not analyzed under either Rule 12(b)(1) or 12(b)(6)." *Yarborough v. Johnson*, No. 18-2688, 2018 WL 6567701, at *1 (D.N.J. Dec. 12, 2018) (quoting *Knox v. Union Twp. Bd. of Educ.*, No. 13-5875, 2015 WL 769930, at *5 n.7 (D.N.J. Feb. 23, 2015)). That said, "[d]ismissal on abstention grounds without retention of jurisdiction is in the nature of a dismissal under Fed. R. Civ. P. 12(b)(6)." *Gwynedd Properties, Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1206 n.18 (3d Cir. 1992).

The Court addresses the potentially ongoing state proceedings at issue here: (1) the criminal matter and (2) the custody proceedings. With respect to the former, *Younger* "requires federal courts to abstain from deciding cases that would interfere with certain ongoing state proceedings[,]" including pending state criminal prosecutions. *Malhan*, 938 F.3d at 461 (citations omitted). Considering the *Middlesex* factors—if "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims", *id.*—these are all satisfied here. Plaintiff pleads that she is the subject of an indictment that pertains to her charge for interference with the custody of a child—"'[f]amily relations are a traditional area of state concern[.]'" *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 628 (E.D. Pa. 2014) (quoting *Moore v. Sims,* 442 U.S. 415, 435 (1979)), *aff'd*, 572 F. App'x 68 (3d Cir. 2014). Thus, the first and second *Middlesex* factors are satisfied. Further, by definition, because these proceedings are ongoing, Plaintiff has ample opportunity to raise the claims she raises here in her criminal proceedings, thereby satisfying the third factor. *Younger* abstention prevents the Court from interfering in this ongoing criminal prosecution.[13]

In a similar way, even if the child custody proceedings underlying Plaintiff's Complaint are ongoing, "child custody proceedings are a strong candidate for *Younger* abstention." *Mikhail*, 991 F. Supp. 2d at 626. Child custody cases implicate the third *Younger* category, that is, "pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *See Malhan*, 938 F.3d at 462. In evaluating the *Middlesex* factors as required, even if the Court is unclear if the child custody proceedings are ongoing, they are

---

[13] For these reasons, Plaintiff's request for the dismissal of her Indictment in Monmouth County must be denied. (*See* ECF No. 52). *See* discussion at *infra* Section III.2.

undoubtedly judicial in nature as Plaintiff's pleadings suggest extensive motion practice and court appearances. (*E.g.*, Compl. ¶¶ 38, 39, 42, 46, 48–49, 51, 56, 65.) As previously noted, these matters involve family relations, and thus, the second *Middlesex* factor is satisfied. *See Mikhail*, 991 F. Supp. 2d at 628 (quoting *Moore*, 442 U.S. at 435). The third *Middlesex* factor is also satisfied as Plaintiff has suggested that she has engaged extensively with the litigation process in seeking (1) restraining orders, (2) an order to show cause, and (3) obtaining other legal advice or avenues of support from the legal system. (Compl. ¶¶ 62, 64, 67, 75, 81–83.)

Accordingly, the Court is without jurisdiction pursuant to the *Rooker-Feldman* doctrine. However, even if the *Rooker-Feldman* doctrine did not apply, "*Younger* abstention principles dictate[] dismissal of the complaint, at least with regard to [Plaintiff's] claims for prospective injunctive and declaratory relief based on alleged violations of their constitutional rights in the ongoing state court custody proceedings." *Wattie-Bey v. Att'y Gen.'s Off.,* 424 F. App'x 95, 96 (3d Cir. 2011).

## B. DISMISSAL WITH PREJUDICE

In light of the above, the Court dismisses Plaintiff's federal causes of action—the ADA claim and the § 1983 claims—with prejudice. *Thompson v. Cobham*, No. 12-1041, 2012 WL 2374724, at *2 (D.N.J. June 22, 2012) (noting that the court lacked jurisdiction of claims against a state judge, *inter alia*, under *Rooker-Feldman* where plaintiff was seeking an overturning of the judge's rulings); *Manu v. Nat'l City Bank of Ind.*, 471 F. App'x 101, 105 (3d Cir. 2012) (affirming the district court's dismissal with prejudice where *Rooker-Feldman* "barred the complaint in its entirety"). Further, since there are no longer any federal causes of action, the Court would decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c).

Therefore, while the lawsuit before the Court is dismissed with prejudice, it is dismissed without prejudice to Plaintiff's right to plead her state law claims in state court.

The Court offers additional explication as to why dismissal with prejudice in this case is appropriate. Even if *Rooker-Feldman* did not apply in this case, most—if not all—Defendants here are immune from suit. *See Wharwood v. Wells Fargo Bank N.A.*, No. 19-16590, 2020 WL 6617649, at *4 (D.N.J. Nov. 12, 2020), *aff'd.*, No. 20-3449, 2021 WL 4438749 (3d Cir. Sept. 28, 2021) (dismissing plaintiffs' claims with prejudice where they were barred by both *Rooker-Feldman* and sovereign immunity); *Gary v. Gardner*, 445 F. App'x 465, 467 (3d Cir. 2011) (affirming dismissal with prejudice of claims barred by judicial immunity); *Tilli v. Ford*, 566 F. App'x 105, 106 (3d Cir. 2014) (affirming dismissal of claims against county clerk of judicial records on judicial immunity grounds); *Giordano v. Vilacoba*, No. 22-3294, 2024 WL 580153, at *1 (D.N.J. Feb. 13, 2024) (dismissing with prejudice claims against prosecutor's office and prosecutor on prosecutorial immunity grounds where plaintiff's claims surrounded decisions to initiate, pursue and litigate prosecution against plaintiff). Thereafter, the remaining Defendants— who may themselves be entitled to some form of immunity—do not have a cause of action leveled against them and should also be dismissed. After these analyses, the Court then briefly discusses why dismissal with prejudice is appropriate here.

### a. State Defendants: Defendants State of New Jersey, the Administrative Office of the Courts, DCF, DCPP

The State of New Jersey, the Administrative Office of the Courts, DCF, and DCPP (collectively, the "State Defendants") are immune from suit under the Eleventh Amendment. "As developed, the Eleventh Amendment affords states and state agencies immunity from suits brought by citizens in federal court." *Rich v. New Jersey*, No. 14-2075, 2015 WL 2226029, at *6 (D.N.J. May 12, 2015) (citing *MCI Telecom. Corp. v. Bell Atl.-Pa.*, 271 F.3d 491, 503 (3d Cir. 2001)).

"[T]he Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996) (internal citations omitted). The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against any one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Overall, this serves to render "an unconsenting State [] immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). The Eleventh Amendment does not just protect the State, but also, "arms of the state—including agencies, departments, and officials—are entitled to the protections of Eleventh Amendment immunity from suit when the state is the real party in interest." *Rich*, 2015 WL 2226029, at *6 (internal citations omitted). "There are three 'narrowly circumscribed' exceptions that have been established to limit the breadth of the Eleventh Amendment: (1) congressional abrogation; (2) waiver by the state; and (3) suits against individual state officers for prospective injunctive and declaratory relief." *Id.* at *7 (internal citations omitted). The State of New Jersey is named in Plaintiff's ADA and § 1983 claims. The Administrative Office of the Courts is named only in the ADA claim while the DCF and DCPP are named only in the § 1983 claims. For the reasons below, the State Defendants are immune from suit here under the Eleventh Amendment.

Here, the State of New Jersey has not consented to this suit nor has it waived its immunity. It is thus immune from suit. *See* Rich, 2015 WL 2226029, at *7 (finding the State of New Jersey immune under sovereign immunity theories for both ADA and § 1983 claims). As to the other Defendants, the Court follows others in this District in finding them likewise entitled to sovereign immunity. *See Irving v. Bd. of Chosen Freeholders of Burlington Cnty.*, No. 19-07276, 2021 WL

717388, at *8 (D.N.J. Feb. 24, 2021) (finding that the "[Administrative Office of the Courts] is an arm of the State and therefore entitled to sovereign immunity." (collecting cases)); *Dongon v. Banar*, No. 08-5331, 2009 WL 10695064, at *2 n.3 (D.N.J. July 22, 2009), *aff'd*, 363 F. App'x 153 (3d Cir. 2010) ("The Superior Court of New Jersey, its vicinages and the New Jersey Administrative Office of the Courts are part of the judicial branch of the State of New Jersey and are considered 'arms' of the state of New Jersey . . . . Therefore, they are protected from any claim for damages by virtue of the Eleventh Amendment, which grants the State sovereign immunity . . . ." (internal citation omitted)); *Rich*, 2015 WL 2226029, at *7 (noting that Courts in our District have "long held that, as a matter of law, DCF is an arm of the state for sovereign immunity purposes" (collecting cases)); *Wilson v. New Jersey Div. of Child Prot. & Permanency*, No. 13-3346, 2019 WL 13260178, at *16 (D.N.J. Aug. 23, 2019) (finding DCPP subject to sovereign immunity); *Jentis v. New Jersey*, No. 18-09467, 2023 WL 2570217, at *3 (D.N.J. Mar. 20, 2023) (same). Accordingly, the State of New Jersey, the Administrative Office of the Courts, DCF and DCPP are immune from suit here under the Eleventh Amendment.

### b. The Judge Defendants: Defendants Monmouth County Superior Court Judges Comer, Lemieux, Newman, and Torregrosso-O'Connor

Plaintiff levels claims against a number of individual Defendants—Monmouth County Superior Court Judges—Comer, Lemieux, Newman, and Torregrosso-O'Connor (collectively, the "Judge Defendants"). The Judge Defendants are protected under the doctrine of absolute immunity. "The doctrine of judicial immunity is founded upon the premise that a judge, in performing his or her judicial duties, should be free to act upon his or her convictions without threat of suit for damages." *Figueroa v. Blackburn*, 208 F.3d 435, 440 (3d Cir. 2000) (citing *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1872)). Indeed, judicial immunity extends even to judicial acts that are taken "'in excess of [the judge's] jurisdiction, and are alleged to have been

done maliciously or corruptly.'" *Stump v. Sparkman*, 435 U.S. 349, 355–56 (1978) (internal citations omitted). A plaintiff's mere "[d]isagreement with the action taken by the judge . . . does not justify depriving that judge of his immunity . . . . The fact that the issue before the judge is a controversial one is all the more reason that he should be able to act without fear of suit." *Id.* at 363–64.

This case is a quintessential example of an instance where a litigant is dissatisfied with decisions rendered by a presiding trial judge and, as a result, sues that judge. Plaintiff takes issue with the Judge Defendants' rulings in the various legal proceedings in family court; she also objects to the weight given to the evidence by same in her family court proceedings. (*E.g.*, Compl. ¶¶ 66, 68, 70, 82, 83, 86.) As explained by the Third Circuit, a judge's "immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial acts, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Figueroa*, 208 F.3d at 443 (internal citations omitted). Neither of these circumstances apply here, as no facts have been set forth that the Judge Defendants were undertaking nonjudicial acts nor that they were without jurisdiction. The Judge Defendants are entitled to absolute judicial immunity and must be dismissed from this suit with prejudice. *See Beaver v. Union Cnty. Pennsylvania*, 619 F. App'x 80, 83 (3d Cir. 2015) (affirming the district court where judicial immunity applied in a case where a *pro se* plaintiff sued the presiding judge in his criminal matter).

### c. The Employee Defendants: Defendants DCF Commissioner Christine Norbut Beyer, DCF Employee Defendants, Kaitlyn McGinn, Mary Lippincott, and Gina Kirk; and judiciary employee Defendant Tonya Hopson

In a similar way, (1) Commissioner Christine Norbut Beyer; and DCF Employee Defendants, (2) Kaitlyn McGinn, (3) Mary Lippincott, and (4) Gina Kirk, and judiciary employee

Defendant (5) Tonya Hopson (collectively, "Employee Defendants") are entitled to quasi-judicial immunity. "New Jersey courts have also recognized that . . . caseworkers, employees, supervisors, and directors, as well as New Jersey Deputies Attorney General and the Attorney General are entitled to absolute immunity where these individuals are 'performing judicial acts within the jurisdiction of the Superior Court, Family Part[.]'" *Melleady*, 2011 WL 6303245, at *15 (collecting cases). Indeed, it is well-established that the immunity doctrine has been extended to "certain others who perform functions closely associated with the judicial process," including "those who serve as arms of the court, . . . fulfill[ing] a quasi-judicial role at the court's request," *Russell v. Richardson*, 905 F.3d 239, 247 (3d Cir. 2018) (internal citation and quotation marks omitted).

To the extent that there are any facts alleged regarding the basis of the Employee Defendants' liability in this matter, it appears to be limited to the following: (1) a text message that Plaintiff sent Defendant Gina Kirk about the welfare of Plaintiff's child to which Defendant Gina Kirk did not respond, (Compl. ¶ 92); (2) a February 2, 2024 email sent to Defendants Christine Norbut Beyer and Mary Lippincott requesting "case file records," which were never sent,[14] (*id.* ¶ 89). From what the Court can tell, this complained-of conduct was attendant to "judicial acts within the jurisdiction of the Superior Court, Family Part[.]" *Melleady*, 2011 WL 6303245, at *15. Accordingly, the Employee Defendants are entitled to quasi-judicial immunity. *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 772 (3d Cir. 2000) (finding that deputy court administrator of the family court division was entitled to quasi-judicial immunity where he acted upon orders of the judge).

---

[14] Notably, these case files appear to pertain to M.P., as she states further "there is no law stating they can't release the records I am the mother . . . ." (*Id.* ¶ 89.)

#### d. The Freehold Township Police Department

Similarly, the Freehold Township Police Department is immune. The Third Circuit has explained that quasi-judicial immunity "extends to the acts authorized by court order, *i.e.*, to the execution of a court order," but not to the manner in which a court order is executed. *Russell*, 905 F.3d at 250. "[A] court administrator or deputy administrator, who is charged with the duty of carrying out facially valid court orders, enjoys quasi-judicial immunity from liability for damages in a suit challenging conduct prescribed by that order." *Addlespurger v. Corbett*, 461 F. App'x 82, 85 (3d Cir. 2012) (internal citations omitted); *see also Dongon v. Banar*, 363 F. App'x 153, 156 (3d Cir. 2010) (extending quasi-judicial immunity to other court employees responsible for carrying out court orders). The Freehold Township Police Department is entitled to quasi-judicial immunity here where Plaintiff was served with a valid Court Order and where Plaintiff has not alleged any facts surrounding the execution of this order that calls into question the Freehold Police Department's immunity.

Plaintiff alleges the five members of the Freehold Police Department "aggressive[ly] bang[ed] on [her] door" at 11 p.m. to serve her with an order issued by Judge Comer—ostensibly an order that was emergent and related to the custody of her child. (*See* Compl. ¶ 57.) The enforcement of a facially valid court order is protected by quasi-judicial immunity. *Nemeth v. Off. of the Clerk of the N.J. Superior Ct.*, No. 19-16809, 2020 WL 2537754, at *8 (D.N.J. May 19, 2020), *aff'd*, 837 F. App'x 924 (3d Cir. 2020) (finding that the police's execution of a writ of execution and possession which they reasonably perceived as a valid judicial directive was protected under quasi-judicial immunity) (internal citation omitted); *Villarreal v. New Jersey*, 803 F. App'x 583, 588 (3d Cir. 2020) (finding a sheriff was entitled to absolute quasi-judicial immunity where he enforced a foreclosure judgment and conducted a sale of a property). Here, there have

been no facts alleged that the Freehold Township Police Department acted in an unreasonable manner when executing the order. The only conduct pled in this lawsuit—that they aggressively "bang[ed]" on Plaintiff's door and served a facially-valid court order upon Plaintiff at 11 p.m.— does not constitute unreasonable conduct under the law such that immunity is rendered inapplicable. (*See* Compl. ¶ 57).

### e.  Attorney General Matthew Platkin and the Monmouth County Prosecutor's Office

As to Attorney General Matthew Platkin and the Monmouth County Prosecutor's Office, scant facts regarding their purported liability have been put forward. With respect to Attorney General Matthew Platkin, Plaintiff claims that Attorney General Platkin allegedly "did not respond" to a complaint "filed" by Plaintiff which allegedly set forth "how children are being harmed by certain Judges and DCPP caseworkers." (*Id.* ¶ 87). In terms of the prospective liability of the Monmouth County Prosecutor's Office, Plaintiff appears to claim that the Monmouth County Prosecutor's Office failed to investigate her claims of improprieties in family court. (*Id.* at ¶¶ 49–50.) Additionally, Plaintiff argues that she emailed the Monmouth County Prosecutor's Office "regarding fraud," and they never responded. (*Id.* ¶ 50).

It is well-settled that prosecutors are absolutely immune from suit for all actions and decisions undertaken in furtherance of their prosecutorial duties. *Imbler v. Pachtman,* 424 U.S. 409, 410 (1976). As is relevant here, the Third Circuit has held that "[t]he decision to initiate a prosecution is at the core of a prosecutor's judicial role," and that "[a] prosecutor is absolutely immune when making this decision, even where he acts without a good faith belief that any wrongdoing has occurred." *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir. 1992) (internal citations omitted). In the present case, all the allegations surrounding Attorney General Matthew Platkin and the Monmouth County Prosecutor's Office surround their decisions to initiate a

prosecution. These decisions are a core prosecutorial function; accordingly, Attorney General Matthew Platkin and the Monmouth County Prosecutor's Office are absolutely immune for these decisions. *See id.*

Based on the foregoing, to the extent that the causes of action against these Defendants are not barred under *Rooker-Feldman*, Defendants the State of New Jersey; the Administrative Office of the Courts; DCF; DCPP; the Judge Defendants; the Employee Defendants; the Freehold Township Police Department; Attorney General Matthew Platkin; and the Monmouth County Prosecutor's Office are immune from suit.

**f. Remaining Defendants**

To the extent *Rooker-Feldman* does not apply, two Defendants remain: Allan Weinberg, Esq. ("Defendant Weinberg")—Pessolano's lawyer in the family court proceedings—and Detective Sergeant Frank Mount ("Sergeant Mount"). In terms of federal causes of action, Defendant Weinberg and Sergeant Mount are named in Plaintiff's § 1983 claims and her Declaratory Judgment Act claim. Because the Declaratory Judgment Act does not provide a separate basis upon which this Court may exercise subject matter jurisdiction, *Auto-Owners Ins. Co.*, 835 F.3d at 394, the Court addresses only Plaintiff's claims against these individual Defendants under § 1983. As demonstrated below, because no causes of action are asserted against either of these individual Defendants, they must be dismissed.

First analyzing the claims against Defendant Weinberg, no cause of action has been stated against him, and he is dismissed with prejudice from this action.[15] It is well-settled that private

---

[15] Defendant Weinberg argues that the New Jersey litigation privilege protects him from liability with respect to the § 1983 claims. While the Court believes that the litigation privilege here could apply if a claim that was plausible on its face was raised against him, *see Wilson*, 2019 WL 13260178, at *28 (applying the New Jersey Litigation privilege to a § 1983 claim), the Court need not address this issue given that there is no federal cause of action to apply the litigation privilege to in this matter.

actors are generally not subject to § 1983 liability, although they may be "if they 'jointly engaged with state officials in a challenged action,' such that they can be deemed to have acted under color of law[.]" *Kenworthy v. Lyndhurst Police Dep't*, No. 18-12822, 2020 WL 289555, at *5 (D.N.J. Jan. 21, 2020) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980)). Acting under the color of law is a threshold issue in a § 1983 claim. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995). Here, no facts have been alleged that Defendant Weinberg was acting under the color of law, and indeed, there is no basis to believe that he was; he was merely Pessolano's attorney in the custody dispute in state court. In attempting to assert Defendant Weinberg's liability, Plaintiff argues generally that he "submitted falsified certifications" in state court, (Compl. ¶ 85), "asked Judge Thomas Comer for an adjournment" which allowed Defendant Weinberg and his client to "r[un] out of the court" so that Pessolano could allegedly falsify a urinalysis, (*id.* ¶ 38), and conspired with others to serve Plaintiff with an order of eviction, (*id.* ¶ 57). While Plaintiff claims broadly that Defendant Weinberg "participated in, directed and/or knew of, and acquiesced in unlawful actions" with other Defendants—which Plaintiff claims ultimately harmed her—there is no factual basis to conclude that he acted under the color of state law, a threshold issue in a § 1983 action. *See Groman*, 47 F.3d at 638 ("There is no liability under § 1983 for those not acting under color of law." (internal citations omitted)). Accordingly, Defendant Weinberg is dismissed with prejudice.

Similarly, Sergeant Mount must be dismissed. The allegations of Sergeant Mount's actual involvement in this dispute are sparse.[16] In terms of the facts provided to support Plaintiff's arguments, Plaintiff pleads that on July 30, 2023, Sergeant Mount replied to an email she sent him

---

[16] In this vein, while the Court believes that Sergeant Mount may be entitled to immunity, the Court is without sufficient facts on this issue to render a determination on same.

with allegations against Pessolano and that Sergeant Mount "issued complaint Seq. No. 000067m, dated 2/8/24, with said minors [sic] private cell number on said complaint which is a violation of the Children's Privacy Protection Act [sic] . . . ." (*Id.* ¶¶ 75–76.) No other factual allegations against Sergeant Mount are leveled within the Complaint.

To plead a cause of action under § 1983, a Plaintiff must show: "(1) that the conduct complained of was committed by a person acting under the color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011) (internal citations omitted). Here, there is no facially plausible claim to support that any violation occurred. Construing her claims generously, Plaintiff appears to argue a § 1983 violation by virtue of the complaint that Sergeant Mount filed on her behalf. Indeed, Sergeant Mount appears to be involved in the separate, criminal action that is ongoing in state court surrounding the transmission of this complaint in what is purported to be a violation of the Children's Privacy Protection Act. This does not equate to § 1983 liability, and the claims against Sergeant Mount must be with dismissed.

**g. Dismissal with Prejudice**

All Defendants in this case request dismissal with prejudice. (*See generally* ECF No. 22-4; ECF No. 24-2; ECF No. 31-4; ECF No. 32-1; ECF No. 46-1; ECF No. 54-1). In their requests for dismissal with prejudice, Defendants argue that Plaintiff is a "disgruntled State family court litigant," (ECF No. 46-1 at 10), who has leveled "untenable" requests for relief, (*id.* at 34). They argue, *inter alia*, how the Court is without subject matter jurisdiction under *Rooker-Feldman*, and in addition, how various Defendants are immune from suit.

Dismissal of claims with prejudice is appropriate where amendment of the complaint would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 110 (3d Cir.

2002); *Wharwood v. Wells Fargo Bank N.A.*, No. 19-16590, 2020 WL 6617649, at *4 (D.N.J. Nov. 12, 2020), *aff'd.*, No. 20-3449, 2021 WL 4438749 (3d Cir. Sept. 28, 2021) (dismissing plaintiffs' claims with prejudice where they were barred by both *Rooker-Feldman* and sovereign immunity and therefore, amendment would be futile); *Gary v. Gardner*, No. 11-2854, 2011 WL 13196543, at *1 n.1 (E.D. Pa. June 7, 2011), *aff'd*, 445 F. App'x 465 (3d Cir. 2011) (noting in dismissing with prejudice that "[b]ecause the defendants are immune, amendment of the Complaint would be futile . . . ."); *Reihner v. Washington Cnty., Pa.*, No. 15-143, 2015 WL 6737972, at *2 (W.D. Pa. Nov. 4, 2015), *aff'd as modified*, 672 F. App'x 142 (3d Cir. 2016) (dismissing with prejudice a complaint because amendment would be futile because, *inter alia,* the judge was protected under absolute judicial immunity and the district attorney was protected under prosecutorial immunity).

Here, amendment would be futile because the Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine. As discussed at length above, at their core, Plaintiff's claims are an invitation to this Court to alter or otherwise interfere with the state court proceedings. The Court cannot do this.

What is more, even if the Court had jurisdiction, all but two of these Defendants are immune from the claims leveled against them under the doctrines of sovereign immunity, judicial immunity, quasi-judicial immunity, and prosecutorial immunity. The underlying purposes of these doctrines are served by dismissal with prejudice. That is to say: these immunity doctrines—where properly employed—serve to protect the integrity of the legal system from those who seek to disrupt it. *See Stump*, 435 U.S. at 363–64 (in the judicial immunity context, noting that plaintiff's mere "[d]isagreement with the action taken by the judge . . . does not justify depriving that judge of his immunity . . . . The fact that the issue before the judge is a controversial one is all the more reason that he should be able to act without fear of suit."); *Gleeson v. Robson*, No. 02-1747, 2005

WL 1210948, at *31 (M.D. Pa. 2005), *aff'd*, 190 F. App'x 165 (3d Cir. 2006) (noting that the "primary purpose" of prosecutorial immunity is "to protect the judicial process itself . . . .") There is "no set of facts" that Plaintiff could put forth to cure this deficiency. *Wharwood*, 2020 WL 6617649, at *4.

Amendment would also be inequitable. Where there are Defendants not protected by immunity, Plaintiff stated no claim against them. When looking at the two Defendants in question—Defendant Weinberg and Sergeant Mount—allowing Plaintiff an opportunity to amend her complaint would be inequitable since it would subject Defendants "to additional cost in added time, attention and financial expense[]" in a case where there is no claim that is plausible on its face. *See Krasil v. Betze*, No. 22-6914, 2023 WL 6635319, at *19 (D.N.J. Oct. 12, 2023), *appeal dismissed*, No. 23-3006, 2024 WL 2010217 (3d Cir. Mar. 25, 2024). Specifically, Defendant Weinberg—Pessolano's lawyer in the custody proceedings—and Sergeant Mount—a police officer who appears to have no relationship to this matter other than that he failed to investigate claims as Plaintiff would have liked—would be subjected to extended litigation. This would be inequitable. *See id.*

Preventing the amendment of claims against these two individual Defendants also serves to prevent the opening of the floodgates of litigation to the multitude of prospective discontented litigants who would attempt to impose liability against individuals whose only prospective liability was the fact that they were involved in a contentious custody dispute. *See Campbell v. Balon*, No. 16-00779, 2017 WL 2880856, at *22 (M.D. Pa. July 6, 2017) (in the torts context, noting that "recognizing a claim . . . in this circumstance would contradict the high standard required under Pennsylvania law and open the floodgates of litigation" and accordingly, given Plaintiff's "exhaustive allegations" concerning the related claim, dismissing said claim with prejudice.)

Accordingly, amendment here would be both futile and inequitable, and the claims against Defendant Weinberg and Sergeant Mount must also be denied with prejudice.

### 2. PLAINTIFF'S MOTION FOR EMERGENT RELIEF AND MOTION TO DISMISS THE INDICTMENT

Although they are likely moot given the above, given Plaintiff's *pro se* status, the Court briefly addresses Plaintiff's Miscellaneous Motions. The first is "Plaintiff's Motion for Emergent Relief," filed on April 3, 2024. (*See* ECF No. 17.) Specifically, she asks the Court to "return[] the child M.P. back to the maternal mother [sic] as there were no grounds to remove the child . . . ." (*Id.* ¶ 1.) Plaintiff expounded on this request in a document titled "Motion to Dismiss," (ECF No. 27), which the Court interprets as a supplement to her Motion for Emergent Relief.[17]

Since Plaintiff is "inviting the district court to review and reject the state judgments[,]" *Great W. Mining & Min. Co.*, 615 F.3d at 166 (internal citations omitted), the Court cannot provide Plaintiff with the relief she seeks as it is barred by *Rooker-Feldman*. *Lane v. New Jersey*, 753 F. App'x 129, 131 (3d Cir. 2018) (upholding the District Court where it dismissed plaintiff's complaint on *Rooker-Feldman* grounds where plaintiff complained of injuries arising from state court custody orders); *Lapp v. Cohen*, No. 22-00949, 2023 WL 7932470, at *5 (M.D. Pa. Aug. 31, 2023), *report and recommendation adopted,* No. 22-0949, 2023 WL 7924863 (M.D. Pa. Nov. 16, 2023) (finding plaintiff's request for injunctive relief, where plaintiff's requested relief concerned a state court custody order, was barred by *Rooker-Feldman*).[18] Thus, Plaintiff's Motion for Emergent Relief, (ECF No. 17)—and its supplement, (ECF No. 27)—are denied.

---

[17] *See* discussion at *supra* n.3.

[18] This analysis is further supported by letters submitted by Plaintiff to the Court. For example, in a letter dated September 6, 2024, Plaintiff wrote the following: "My child is an innocent little boy and his dad is a functioning drug addict that he should not be around. I am including exhibits to support this letter. I have video of inappropriate things his dad is allowing as it is online. There is documentation of him throwing up when he was around Jane Doe. Judge Kirsh [sic] this is a serious matter that needs your attention so no

In her second Miscellaneous Motion filed in late August 2024, Plaintiff asks for emergent relief in a "Motion to Dismiss the Indictment in Monmouth County." (*See* ECF No. 52.) In this motion, Plaintiff states that "[t]here was fraud upon the court when judge Thomas Comer [sic] . . . entered into a conspiracy to commit fraud . . . ." (*Id.* ¶ 1.) Plaintiff claims further that this fraud "set off a chain of events which resulted in a falsified charge and a wrongful arrest of the defendant[19] . . . ." (*Id.* ¶ 2.) Plaintiff continues, essentially arguing that the indictment in this criminal case in state court was a form of retaliation and discrimination against her as a *pro se*, African American, female litigant. (*See* Compl. ¶¶ 7–8.) Here, the Court cannot provide Plaintiff with the relief she seeks because any decision on this issue would be impermissible under the *Younger* abstention doctrine. *Younger* "requires federal courts to abstain from deciding cases that would interfere with certain ongoing state proceedings[,]" including pending state criminal prosecutions. *Malhan v. Sec'y U.S. Dep't of State*, 938 F.3d 453, 461 (3d Cir. 2019) (citations omitted). Per Plaintiff's own filings, this proceeding is ongoing as Plaintiff appears to be arguing that the indictment has been outstanding past 90 days. (ECF No. 52 ¶ 7.) The Court here will abstain from interfering with the pending State criminal action. Accordingly, Plaintiff's Motion for Dismissal of the Indictment, (ECF No. 52), is denied.

---

irreparable harm is done. Please rule on that motion. There was a fraud upon the court in Monmouth County and that ex parte hearing was a constitutional violation of my fourteenth amendment rights. The Life Insurance Fraud was formally reported." (ECF No 53 at 1.)

[19] This is presumably a reference to Plaintiff herself.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motions are **GRANTED**. (ECF Nos. 22, 24, 31, 32, 46, and 54.) Plaintiff's Motions are **DENIED**. (ECF Nos. 17, 27, and 52.) The Complaint is dismissed with prejudice. The Clerk of the Court is instructed to close the case file. An appropriate Order will accompany this Opinion.

ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: October 8, 2024